IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALEX G., et al.

Plaintiffs,

v.

BOARD OF TRUSTEES OF DAVIS JOINT UNIFIED SCHOOL DISTRICT, et al.,

Defendants.

No. Civ. 03-2258 DFL DAD

ORDER

Plaintiff Alex G. ("Alex") is an elementary school student who is eligible for special education services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. He and his parents, Dr. Stephen G. and Helen G., assert an IDEA claim against the Davis Joint Unified School District (the "District"), the District's board of trustees, and a number of its administrators and educators. Plaintiffs now appeal from a decision of the Special Education Hearing Office ("SEHO") which found that: (1) the District provided Alex with a free appropriate public education ("FAPE") between February 19

and April 18, 2003; (2) the SEHO did not have jurisdiction to review Alex's placement between April 18 and June 11, 2003; and (3) the District offered Alex a FAPE for the 2003-04 school year. Plaintiffs contend that these findings are not supported by a preponderance of the evidence.[1] (First Am. Compl. ¶ 47.)

I.

Federal courts review SEHO proceedings de novo. Amanda J. v. Clark County Sch. Dist., 267 F.3d 877, 887-88 (9th Cir. 2001). However, this "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities." Bd. of Educ. v. Rowley, 458 U.S. 176, 206, 102 S.Ct. 3034 (1982). Federal courts must defer to the SEHO's "specialized knowledge and experience" in resolving difficult questions of educational policy and give "due weight" to the results of SEHO proceedings. Amanda J., 267 F.3d at 888. This is particularly important when the SEHO's findings are "thorough and careful," Seattle Sch. Dist., No. 1 v. B.S., 82 F.3d 1493, 1499 (9th Cir. 1996), as they are here. In reviewing an administrative decision, the federal court shall "grant such relief as the court determines is appropriate" based on a "preponderance of the evidence." 20 U.S.C. § 1415(i)(2)(B).

A. SEHO's Finding that the District Provided Alex a FAPE Between February 19 and April 18, 2003

Plaintiffs argue that the District did not provide a FAPE

---

[1] The court does not set forth the specific facts here because they are discussed in detail in the SEHO opinion.

between February 19 and April 18, 2003 because it did not substantially comply with Bridges'[2] recommendations to: (1) ignore Alex's maladaptive behavior; and (2) implement a "whole-class reinforcement system." Upon careful review, the court agrees with the Hearing Officer that the District was in substantial compliance with the terms of a settlement agreement by which the parties agreed upon a FAPE for Alex.

The District had only two months to implement Bridges' recommendations, and Alex was out of the classroom for most of this time. Nevertheless, the District made good upon its agreement to work with Bridges by: (1) hiring Bridges to provide twenty hours of consulting services per month; (2) employing a full-time Bridges' aide to accompany Alex every school day; (3) meeting with Bridges consultants in several individualized education plan ("IEP") meetings; and (4) conducting a six-hour Bridges training for its staff. These were all significant steps. Even so, plaintiffs complain that in two respects the District fell short of providing a FAPE - (1) by failing to ignore Alex when he acted badly, particularly by pulling the fire alarm, and (2) by failing to provide the exact "whole class reinforcement" proposal made by Bridges. These two issues are addressed in turn.

---

[2] Bridges is an outside consulting organization that the District agreed to hire to conduct a functional analysis assessment and develop a behavior implementation plan ("BIP") for Alex within the school setting.

1. Ignoring Alex's Maladaptive Behavior

Bridges suggested that Alex would stop acting badly, including acts of violence and pulling fire alarms, if the teachers would simply ignore his bad conduct thereby depriving him of the reaction he apparently sought. The court finds that the District attempted to follow this policy as best it could. The only occasions on which the District staff did not ignore Alex's maladaptive behavior was when he threatened the safety of others at the school. (Tomsky Decl. Ex. G at 82.) The nature of a school setting requires teachers to balance the needs of disabled students with the safety interests of others.[3] Given that context, both the school and Bridges needed time to create a plan that reconciled those interests.

Principal Coughran raised her concerns regarding the safety of this strategy at the March 19 IEP meeting. In response, Bridges altered the strategy so that Bridges staff would intervene to assure safety of others. (Id. Ex. Q at 282.) Thereafter, the District reinforced the importance of the new strategy with its staff on several occasions. (Id. Ex. G at 83, Ex. O at 271.) This demonstrates a good faith effort on the District's part to create a balanced plan. There was no breach of its agreement to work with Bridges.

---

[3] It should be obvious that it would be difficult to ignore a fire alarm in the context of an elementary school. Moreover, there is evidence that when Alex pulled the alarm he also broke a glass casing, causing shards of glass to scatter on the ground posing a hazard to other children unless the glass was cleaned up.

2. Whole-Class Reinforcement System

Bridges suggested a "whole-class reinforcement" program. Alex's teacher, Penelope Dwyer, immediately implemented something similar to the "whole-class reinforcement" program that could easily be modified to fulfill Bridges' precise recommendations. With her "Penny's proud" and "Grant thinks I'm great" programs, she provided tangible, versus verbal, rewards that she could give to the whole class or to each individual. (Pls.' Ex. 6 at 25-26.) Although the program was not exactly what Bridges recommended, it was very close and could be modified. Again, there was no breach of the District's agreement to work with Bridges' recommendations.

In sum, despite the short time period, the District and Bridges worked together to ensure a FAPE for Alex. Accordingly, the court upholds the SEHO's finding that the District provided Alex a FAPE between February 19 and April 18, 2003.

B. The Hearing Officer's Jurisdiction over a Court-Ordered TRO

Plaintiffs argue that the SEHO erred in declining to exercise jurisdiction over Alex's placement between April 18 and June 11, 2003 while the state court TRO was effective. (Brief at 11.) Although plaintiffs state that no "practical remedy" exists for this claim, they ask the court to find that the SEHO had jurisdiction to address this issue "to assist future Hearing Officers" and provide them "with guidance on how to address similar issues." (Id. at 15.) In effect, plaintiffs request an advisory opinion. This exceeds the jurisdiction of the court.

Where no relief is possible, the claim may be viewed as moot. Alternatively, plaintiffs lack standing where the court's decision would do nothing to redress an injury suffered by plaintiffs. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130 (1992).[4] Therefore, the court declines to address this claim.

C. SEHO's Finding that the District Provided Alex a FAPE for the 2003-04 School Year

Plaintiffs challenge the SEHO's ruling on the 2003-04 school year only on the grounds that it wrongfully concluded that they were provided a meaningful opportunity to participate in developing an IEP for the 2003-04 school year. Plaintiffs claim that they were denied meaningful participation based on the following facts. First, they complain that some of the members of the IEP team met without them to set forth goals and objectives before the IEP meeting. (Brief at 17, 19.) Second, they assert that the District intimidated them and dissuaded their input by: (1) inviting Patwin staff to the IEP meeting; (2) introducing plans developed at Patwin; and (3) conducting the meeting in the absence of Bridges or any other behaviorist not employed by the District. (Id. at 16.) Based on these facts, Alex's parents claim that the District had made its decision

---

[4] Nor does the case fall within the category of cases that are "capable of repetition, yet evading review" for the simple reason that the issue need not evade review. See Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181 (1982). The claim could have been brought promptly to a Hearing Officer and an appeal taken to the District Court while the state court order was still in effect.

regarding Alex's placement at Patwin before the IEP meeting, making it futile for them to engage in any discussion on the issue. (Id. at 17, 19.) Third, they claim that the input they did offer regarding their concerns over using physical restraints on Alex was ignored. (Reply at 9.) The court does not agree with these contentions.

School district personnel are entitled to meet to prepare a proposal to discuss at an IEP meeting. 34 C.F.R. § 300.501. Therefore, the SEHO correctly concluded that the District's failure to invite Alex's parents to formulate draft goals and objectives did not deprive them of meaningful participation.

Also, plaintiffs present no evidence that the District dissuaded their input or excluded them in bad faith at the IEP meeting. Instead, the evidence shows that Alex's parents chose to "listen to what the District [was] 'offering' [at the meeting] and not to have input at [that] time." (Tomsky Decl. Ex. V at 364, Ex. W at 315, 372.) Inviting Patwin staff to the meeting was appropriate because they were familiar with the program that the school was offering. It was important for Alex's parents to have the opportunity to listen to and question the Patwin staff. In short, plaintiffs had the opportunity to challenge and to discuss the District's recommendation.

As to physical restraints, there is no evidence that the District simply ignored the parents' concerns about using restraints on Alex. They had a disagreement on this issue. In any event, parents do not have a right under the IDEA to compel a

school district to employ a specific methodology. White v. Ascension Parish Sch. Bd., 343 F.3d 373, 380 (5th Cir. 2003) (citing Lachman v. Illinois St. Bd. of Educ., 852 F.2d 290, 297 (7th Cir. 1988)).

The undisputed evidence presented here demonstrates that Alex's parents were afforded their right to participate as provided by the IDEA but they declined to exercise that right. Therefore, the court upholds the SEHO's decision regarding the provision of a FAPE for the 2003-04 school year.

II.

For the reasons stated above, the court upholds the SEHO's findings that: (1) the District provided Alex with a FAPE between February 19 and April 18, 2003; and (2) Alex's parents had a meaningful opportunity to participate in the IEP process for the 2003-04 school year. The court lacks jurisdiction to decide plaintiffs' claim that the SEHO erred in declining to exercise jurisdiction during the period of time that the state court TRO was in effect.

IT IS SO ORDERED.

Dated: 2/6/2006

DAVID F. LEVI
United States District Judge